TOBE SMITH v. THE STATE.

No. 7380.   Decided February 7, 1923.

Rehearing denied March 7, 1923.

**1.—Intoxicating Liquor—Possession—Sufficiency of the Evidence.**

Where, upon trial of possessing intoxicating liquor, the evidence was sufficient to support the conviction, there was no reversible error.

**2.—Same—Rehearing—Practice on Appeal.**

After considering appellant's motion for rehearing, the court must adhere to its former decision, and overrule the motion.

Appeal from the District Court of Milam.—Tried below before the Honorable John Watson.

Appeal from a conviction of unlawfully possessing intoxicating liquor for the purpose of sale; penalty, imprisonment in the penitentiary for not less than eighteen months nor more than five years.

The opinion states the case.

*Robt. M. Lyles,* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant is charged in the first count in the indictment with unlawfully selling intoxicating liquor to one C. A. Caninenberg, and in the second count with unlawful possession of such liquor for the purpose of sale. Both counts were submitted to the jury and a conviction resulted under the second count.

The case is before us on the sole contention that the evidence is insufficient to support the conviction. In determining this question it is necessary that we look largely to the evidence introduced by the State. We find therefrom that four young men, Caninenberg and three others desired to purchase whisky. They went to the home of Howard Smith, a brother of appellant, and made inquiry of him. The details of the conversation between the proposed purchasers and Howard Smith were not gone into, but it appears from the testimony of one of the boys that Howard Smith stated he did not have any but would "put us on to some.' Another one of the boys stated. "we did not get any whisky at Howard Smith's, because he did not have any there; said he had just taken it down to his brother's, or his brother-in-law's, something like that." Howard Smith and his wife got in the car with the boys and they drove some ten or twelve miles to what was understood by the boys to be Tobe Smith's house. When they reached there Howard Smith got out of the car and talked to appellant, then returned to the car and told the boys it was all right,

whereupon they all got out and went to the back of the house. Appellant brought from the smokehouse a five gallon jug containing whisky. A two gallon jug, a quart fruit jar and a funnel were produced, and appellant and his brother (Howard Smith) poured the whisky out of the five gallon jug and measured it into the two gallon jug. They used the quart jar to measure with, pouring from the five gallon jug into it and from it into the two gallon jug by means of the funnel. The two gallons was to be divided among the purchasers according to the quantity each paid for. One of them paid Howard Smith $10 for his part by means of a check, another one paid him $5 in money, still another handed $2.50 to appellant who passed it on to Howard Smith. It can hardly be questioned, we think, that the state of facts related made out against appellant a case for the possession of whisky for the purpose of sale. The boys were seeking to purchase whisky; they were taken by Howard Smith to a place where appellant had possession of a five gallon jug of it, and from this a sale of two gallons was made. Appellant offered evidence to defeat the State's case. He testified that he and his wife went from his home to visit his brother, Howard Smith; that as he went through Thrall he met a Mexican from whom he had bought whisky on previous occasions, who offered to sell him some in five gallon quantities; that appellant told him he (appellant) could not handle that much himself, but would let him know later; that he went on to his brother's where he spent the night, and reported to him that they could buy five gallons of whisky for forty dollars if he (Howard Smith) would take one-half of it; that they both went to Taylor the next day and there saw the Mexican and agreed to take the whisky; that appellant and his wife expected to spend the next night with his brother-in-law, Monroe Lovelace, and made arrangements with the Mexican to meet them on the road after night at "Kingman's gate" and deliver the whisky at that point; that his brother gave him the twenty dollars to pay for his part of the whisky; that appellant and his wife started to Monroe Lovelace's and when they reached the point at which they had agreed to meet the Mexican he was already there; that appellant paid him the forty dollars and took the five gallon jug of whisky to his brother-in-law's and put it in the smoke house; that some time during the night his brother and other parties came there; and his brother told him he wanted to get two gallons of his part of the whisky; that Lovelace furnished the two gallon jug. Appellant admits that he assisted in transferring the whisky from the five gallon jug to the two gallon jug, but denied that he had any interest in the two gallons that was sold, and that one-half gallon was left of his brother's whisky in the five gallon jug. He disclaimed any interest in the sale of the whisky or that he knew it was going to be sold until it was measured out and the money began to change hands. He said some one handed him some money, but he did not notice how much it was and immediately

passed it on to Howard. He denied receiving anything from the sale of the whisky; said he had no claim in it and made no claim to the proceeds; that when he left Lovelace's he put the other half gallon belonging to his brother in a fruit jar and left it at Lovelace's. Mrs. Tobe Smith testified that she saw Howard Smith give appellant twenty dollars with which to purchase whisky before she and her husband left Howard Smith's house on the night in question, and also testified to receiving the five gallon jug of whisky from a Mexican at some point on the road to Lovelace's. Appellant testified that the Mexican was at the point agreed upon when they reached there. Mrs. Smith does not so remember it, but says they had reached the point and were working on their car when the Mexican drove up, and that he run his car up by the side of theirs and the transfer was made. It may be pertinent to say that although appellant claims to have frequently bought liquor from the Mexican, he could not give his name and apparently had made no effort to find him. The record shows that Howard Smith had plead guilty to the sale of this whisky. Mrs. Howard Smith testified to having seen her husband give the twenty dollars to appellant to purchase the same. She also testified about the trip she and her husband made with the proposed purchasers from their house to Lovelace's where the whisky was secured; that she remained in the car while they had gone around the house to get the whisky and that Mrs. Tobe Smith came to the car and talked to her while they were getting it.

Upon appellant's defense against the charge for unlawful possession of intoxicating liquor for the purpose of sale the court gave at appellant's request the following special charge:

"If you believe from the evidence that the defendant held possession of intoxicating liquor as alleged, and had and held possession of two and one-half gallons thereof for Howard Smith and it was Howard Smith's purpose to sell said whisky, said possession of said 2½ gallons on defendant's part would not be possession for the purpose of sale unless you believe from the evidence beyond a reasonable doubt that he knew of said intention on the part of Howard Smith."

This charge was certainly as favorable to accused upon that point as he was entitled to and the jury determined that issue in favor of the State. We have set out somewhat at length the evidence because the sufficiency thereof is the only question presented for consideration. We think it cannot be doubted that the testimony of the State made out a case authorizing a conviction. The jury being the sole judges of the credibility of the witnesses and of the weight to be given to their testimony had a right to accept or reject the defensive testimony offered. Where they have settled an issue of fact we are not authorized to disturb the finding. If there was no evidence in the record upon which a conviction could be properly based a different question would be presented. After a careful examination of the statement of facts we cannot say the jury was without evidence to support the

conviction. They may not have believed the defensive testimony relative to the manner in which the five-gallon jug of liquor was obtained, or they may have disbelieved appellant's statement that he had no knowledge that the whisky of which he was in possession ,was to be sold. They had an opportunity to hear the witnesses as they testified, to observe their manner, and are in a much better position to pass upon questions of fact than this court can possibly be.

Having settled the matter in favor of the State, our duty clearly calls for an affirmance of the judgment, which is accordingly ordered.

*Affirmed.*

### ON REHEARING.

### March 7, 1923.

MORROW, Presiding Judge.—We have re-examined the facts in the light of the motion for rehearing but are unable to coincide with appellant's contention that there is not sufficient evidence to support the conviction.

The motion is overruled.

*Overruled.*